### RODGERS v. BOUKER CONTRACTING CO.

(District Court, S. D. New York. December 16, 1904.)

1. SHIPPING—LIABILITY OF SCOW FOR LOSS OF CARGO OF STONE—LYING IN EXPOSED POSITION.

    The owner of a scow chartered by the day, with a man in charge, is liable to the charterer for loss of her cargo of stone by her careening while she lay in an exposed position at the end of a pier where she was left by a tug, through the neglect of her master to haul her into the slip, where she would have been protected, which he could have done without difficulty.

In Admiralty. Suit against owner of scow to recover for loss of her cargo.

Peter S. Carter, for libellant.

James J. Macklin, for respondent.

ADAMS, District Judge. This action was brought by John C. Rodgers, the charterer of scow No. 58, against the Bouker Contracting Company, the owner of said scow, to recover the damages sustained through the dumping and loss of a load of stone, at 55th Street, North River, on or about the 26th day of December, 1903.

The scow was towed to the place on Friday, the 25th of December, and left at the end of the wharf. She remained there all of the 25th, the master, instead of hauling into the slip, having endeavored to hire a tug for such purpose but could not get one at the price he was willing to pay. The weather remained comparatively calm and moderate during the day. The next day, however, wind arose in the morning from the westward and by 9 o'clock it was blowing at the rate of 36 miles. It subsequently increased and by noon it was blowing at the rate of more than 50 miles and it remained high the remainder of the day. During the storm the boat careened and the cargo was lost.

The scow was hired by the day, the hire providing, according to custom, for the use of the scow with one man in charge.

The cause of the loss was the failure of the man in charge to move the boat to a secure place during the 25th, or in the early morning of the 26th. It was expected by the tug, which towed her to 55th street, that the master of the scow would haul her into the slip. It does not appear that there would have been any difficulty about doing that and the

master was offered assistance for such purpose by the master of another boat lying in the vicinity, which he rejected. About 6 or 7 o'clock in the evening the boat swung around on one line, so that she was lying partly across the slip. There is testimony to show that at this time the master had disappeared. The boat's position at the end of the pier was one requiring constant care, and in the absence of it, she took in enough water to cause the careening, with the resulting loss. I can not sustain the respondent's contention that the high wind was the proximate cause of the accident. When that came, she should have been in a protected situation.

It seems a clear case of liability on the part of the respondent for the neglect of its agent on the boat to observe the ordinary precautions required by the circumstances.

Decree for the libellant, with an order of reference.